UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD WHITTINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 547 DDN |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Bernard Whittington for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, the decision of the Commissioner is reversed and the case remanded for further proceedings.

## I. BACKGROUND

Plaintiff was born on August 20, 1971, and was 45 years old at the time of his hearing before the Administrative Law Judge. He filed his DIB application on March 3, 2015, alleging a March 4, 2004 onset date and disability due to a back injury, severe depression, a concussion, and impairments in both knees, his elbow, his ankles, his jaw,

---

[1] The Court takes judicial notice that on June 4, 2019, Andrew M. Saul was confirmed by the Senate as Commissioner of Social Security. *See* https://www.congress.gov/nomination/116th-congress/94. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of 42 U.S.C. § 405(g) (last sentence).

and his wrist, insomnia, and sleep apnea. (Tr. 180-81, 230.) Plaintiff's application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 72, 79-80.)

On April 19, 2017, plaintiff and vocational expert Delores Gonzalez (VE) testified before an ALJ. On May 22, 2017, the ALJ issued a decision that plaintiff was not disabled under the Act, as of the date he was last insured under Title II, December 31, 2008. (Tr. 13-23.) The Appeals Council denied plaintiff's request for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. ADMINISTRATIVE RECORD

The following is a summary of the administrative record relevant to this action.

On August 23, 2006, plaintiff saw Michael Einbund, M.D., for an examination related to his worker's compensation claim. (Tr. 679.) Dr. Einbund noted that plaintiff had limited range of motion in his fingers resulting from some deformities and weakness of the fingers. (Tr. 685.) He concluded that plaintiff had full range of motion and no motor weakness in his right shoulder. (Tr. 684.) Dr. Einbund observed restricted range of motion in plaintiff's right elbow, small right finger, and left thumb. (Tr. 685.) He found that plaintiff had normal lower extremity sensation, normal gait, and could walk on his heels and toes; had full range of motion in the hips, knees, and ankles; and had normal bilateral straight-leg raising at 90 degrees. (Tr. 685-86.) Dr. Einbund found that plaintiff had normal strength in both quadriceps, hamstrings, plantar flexors/extensors, and extensor hallucis longus muscles. (Tr. 686.) Dr. Einbund noted that plaintiff's patellar and Achilles reflexes were 2/4, bilaterally. (Tr. 686.)

Dr. Einbund included x-ray findings in his examination of plaintiff. (Tr. 687.) X-rays of plaintiff's pelvis showed "both hips to be well-seated," with no evidence of degenerative change. The sacroiliac joints showed no evidence of sclerosis. X-rays of plaintiff's cervical spine showed no evidence of fracture or dislocation, but revealed degeneration at C6-C7. Further, x-rays of the lumbosacral spine showed no evidence of fracture or dislocation, but revealed mild anterior osteophyte formation. (Tr. 687.)

Dr. Einbund concluded plaintiff required work restrictions from repetitive work above shoulder-level. (Tr. 698.) Regarding plaintiff's elbows and hands, Dr. Einbund recommended plaintiff avoid repetitive gripping and grasping. With regard to plaintiff's knees and ankles, Dr. Einbund recommended avoiding prolonged standing and walking, and repetitive squatting and kneeling. (Tr. 698.)

Also on August 23, 2006, plaintiff saw Robert Rose, M.D., for a neurologic examination. (Tr. 701.) Dr. Rose conducted an electromyogram and nerve conduction velocity studies. (Tr. 714.) Based on these studies, Dr. Rose diagnosed "nerve root irritation" at L4-L5 and L5-S1. (Tr. 715.) Contrary to Dr. Einbund's finding, Dr. Rose documented a positive straight leg test. (Tr. 711.) Further, Dr. Rose noted diffuse weakness in the upper and lower extremities, and weakness in the back. (Tr. 712.) Dr. Rose reported deep tendon reflexes were trace to absent throughout. (Tr. 713.) He concluded plaintiff must avoid lifting greater than 50 pounds or carrying greater than 50 pounds due to the conditions in his back, knees, and ankles, and difficulties with both of his arms. (Tr. 724.) Dr. Rose further opined that plaintiff should avoid situations requiring the operation of arm levers or leg and foot pedals, as well as situations involving significant temperature changes. (Tr. 724.)

On April 17, 2007, plaintiff underwent MRI testing. (Tr. 737.) The MRI scans of plaintiff's lumbar spine revealed 2 to 3 mm. central and posterior disc protrusion. (Tr. 739.) At L5-S1, moderate hypertrophic facet changes were present. Further, the MRI scans indicated that "the neural foramina appear patent," throughout L2-L3, L3-L4, and L5-S1. (Tr. 739.) The term "patent," means "open and unobstructed," referring to the neural foramina being open and not encroaching on the respective nerves.[2]

The Disability Determination Service conducted its review on July 15, 2015, concluding that plaintiff was not disabled. (Tr. 68-70.) The review included the assessment of Psychological Consultant Linda Skolnick, Psy.D., regarding plaintiff's impairments. (Tr. 66-68.)

---

[2] *Medical Definition of Patent,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/patent#medicalDictionary.

**ALJ Hearing**

On April 19, 2017, plaintiff appeared with counsel and testified to the following at a hearing before the ALJ. (Tr. 29-61.) Plaintiff is a former professional football player in the National Football League. (Tr. 34.) Plaintiff lives alone. (Tr. 36.) His parents come to his home during the week to help him cook, and a maid comes to his home to clean. He sits in a hot tub approximately three times a day for twenty minute periods and, sees a neurologist, a psychologist, and a psychiatrist. (Tr. 36.) Plaintiff completes physical therapy twice a week, sees a chiropractor once a week, and sees a masseuse twice a month. (Tr. 36-37.) He can drive to the pharmacy and the chiropractor, because they are less than one mile away. For longer distances, he calls a taxi cab or his parents. (Tr. 51.)

Plaintiff testified he was self-employed as a project manager from 2004 until 2008. The work he performed included purchasing properties, hiring subcontractors to renovate the properties, and then selling the properties. (Tr. 39.) Plaintiff testified that during this time period, he flipped three houses in total. (Tr. 42.) In 2015, plaintiff sold another property. (Tr. 42.)

Plaintiff is 6 feet, 6 inches tall and weighs about 265 pounds. Plaintiff has back pain that began at the end of his playing career in the National Football League with the Cincinnati Bengals. During his playing career, he received a shot of Toradol to relieve the back pain. Plaintiff testified that the back pain began seriously affecting him in 2003, which affected his ability to sit down. His back pain caused his retirement from the NFL. (Tr. 44-45.) He was unable to lift the heavy weights he would ordinarily lift during his NFL career, and all he could do was light jogging. (Tr. 46.) During the time period, he experienced regular headaches. (Tr. 47.) Plaintiff walks slowly and with a limp. (Tr. 48.)

Plaintiff testified that the range of motion in his neck is very limited, that he has limited range of motion in his right hand and right elbow due to surgeries. (Tr. 48.) Further, the range of motion in his left shoulder is limited, as well as in both of his knees, hands, and wrists, and all fingers and thumbs. (Tr. 49.) He testified that he has suffered numerous concussions during his NFL career, which have affected his cognitive ability and memory. (Tr. 50.)

Currently, he sees a pain management doctor, receives injections, and takes morphine at least three to four times per week. He also takes antidepressants. (Tr. 51.)

Vocational Expert Delores Gonzalez testified to the following. Plaintiff has past work as a professional football player (Specific Vocational Preparation (SVP) 6), which she characterized as requiring heavy to very heavy exertion), and property investor (SVP 7, light, skilled). (Tr. 54.)

The ALJ posed several hypothetical questions to the VE. First, the ALJ asked the VE to assume an individual of plaintiff's age, education, and past relevant work. The VE was instructed to assume the

> hypothetical individual had the capacity to perform work at the light level; lift, carry, push, pull, 20 pounds occasionally, 10 pounds frequently; sit, stand, walk for six hours in an eight-hour workday; further limited to only frequent overhead reaching, frequent handling and frequent stooping; would that hypothetical individual be able to perform any of the past work you just described?

(Tr. 56.) The VE answered that this hypothetical person could not perform as a football player, but could do plaintiff's prior work as a property investor. (*Id.*).

In the second hypothetical question, the ALJ had the VE assume that the subject was limited to sedentary exertion. In response, the VE testified that the subject could not perform any of plaintiff's prior work. (Tr. 57.)

In her third hypothetical question, the ALJ had the VE assume the same subject with the sedentary exertional limitation and asked whether the subject could perform other work in the national economy. The VE said this subject could do the work of a document preparer and a tube operator. (*Id.*)

In her fourth hypothetical question, the ALJ had the VE assume the same individual had to be off-task for thirty percent of the day "due to physical injuries." In response, the VE testified that such a person would not be able to work competitively at all. (*Id.*)

In a fifth hypothetical question to the VE, the ALJ assumed the same subject, except that the subject could work at the light exertional level, but with "the additional

limitation of handling reduced to frequent and reaching at frequent; would those same jobs be available; the addresser, [document preparer] and tube operator?" In response, the VE testified:

> The addresser would require frequent reaching, handling, fingering, no stooping. The document preparer would require frequent reaching, handling, fingering; stooping is not present; and the tube operator is frequent reaching, handling, occasional fingering, no stooping.

(Tr. 59-60.)

### III. DECISION OF THE ALJ

On May 22, 2017, the ALJ issued a decision that plaintiff was not disabled under Title II of the Social Security Act through December 31, 2008, the last date insured. (Tr. 13-23.) At Step One of the required five-step sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity between the March 4, 2004 onset date and the date last insured. (Tr. 15-16.) The ALJ considered the issue of significant business activities due to plaintiff's work as President and CEO of a company called X3 during the years 2003 through 2006. However, the ALJ concluded that she would give plaintiff the benefit of the doubt, *i.e.* by assuming plaintiff did no substantial gainful employment during 2003 through 2006, and to perform a full analysis of plaintiff's application for disability benefits. (Tr. 16.)

At Step Two, the ALJ found that plaintiff suffers from the following severe impairments: temporomandibular joint dysfunction, degenerative joint disease, and degenerative disc disease. (Tr. 16.) The ALJ noted that additional diagnoses of other impairments only appeared in the record after plaintiff's date last insured. She concurred with the opinion of psychologist Linda Skolnick and concluded that plaintiff did not suffer from any severe mental impairment. (*Id.*)

At Step Three, the ALJ found that plaintiff had not accomplished his burden of establishing that he suffered an impairment or combination of impairments that met or medically equaled the severity of one of the listed presumptively disabling impairments in 20 CFR Part 404, Subpart P, Appendix 1, on or before December 31, 2008. (*Id.*)

The ALJ found that plaintiff retained the residual functional capacity (RFC), through the date last insured, to perform light work as defined in 20 CFR 404.1567(b), except that he could lift, carry, push, and pull 20 pounds only occasionally and only 10 pounds frequently, and "sit, stand, and walk six hours in an eight-hour workday, and was limited to frequent overhead reaching, frequent handling, and frequent stooping." (Tr. 17.) At Step Four, the ALJ found that plaintiff was unable to perform any of his past relevant work through the date last insured. (Tr. 21.)

At Step Five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, that plaintiff could perform sedentary work as an addresser, document preparer, and tube operator. Accordingly, the ALJ found that plaintiff was not disabled under the Social Security Act, at any time from the alleged onset date through the date last insured. (Tr. 23.)

## IV. GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or could be expected to last for at least 12 continuous months. 42 U.S.C. §

1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

## V. DISCUSSION

Plaintiff's sole argument on judicial review is that the ALJ at Step 3 of her analysis erred by not obtaining a consultative medical expert opinion regarding medical equivalence of plaintiff's back impairment with the requirements of the presumptively disabling condition described by Listing 1.04. He argues the administrative record supports his medical equivalence to Listing 1.04. Listing 1.04 provides:

> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined by 1.00B2b.

Plaintiff argues that he demonstrated all the requirements for medical equivalence with Listing 1.04 for a presumptively disabling spinal disorder. If a claimant has an

impairment or combination of impairments that matches or is substantially equivalent to an impairment in the Listing of Impairments, the applicant is *per se* disabled. 20 C.F.R. § 404.1520(d); *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010).

A claimant's impairment(s) meets a listing only if *all* of the specified medical criteria for that listing are satisfied. *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citations omitted). The burden is on the plaintiff to present medical findings "equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

In her opinion the ALJ considered certain Listings. First, she described Listing 1.02 (major joint dysfunction), stating only that plaintiff failed to establish either of the two major components of the listing and that, "[a]lthough the claimant has records supporting impairments, they are not of the severity required by either part of the listings." (Tr 16.) She considered also Listings 1.04 (spinal disorder), 2.07 (disturbance of the labyrinthine-vestibular function of the ear), 2.08 (speech loss), 2.09 (hearing loss), and 5.08 (weight loss). Regarding the listings, the ALJ stated, "the claimant did not demonstrate any of these impairments at the symptom severity level required by the listings for these impairments." (Tr. 17.)

Plaintiff argues that the ALJ erred in finding the factors of Listing 1.04 unmet. The Court agrees with plaintiff that the ALJ erred in not further developing the record regarding this listing. Regarding Listing 1.04, the ALJ stated only:

> The claimant does not meet Listing 1.04 for a spinal disorder because he lacks evidence of nerve root compression, spinal arachnoiditis, or pseudo-claudication of his lumbar spine that results in an inability to ambulate effectively as of the date last insured.

(Tr. 16.) This finding that no administrative record evidence supported Listing 1.04 is not supported by substantial evidence in the record. Well before his date last insured, on August 23, 2006, plaintiff was examined by neurologist Dr. Robert Rose. Dr. Rose

reported on October 2, 2006, that the exam demonstrated a positive straight leg raising test (Tr. 711), back weakness (Tr. 712), a loss of sensation at L5 and S1 (Tr. 713), and spinal nerve irritation at several levels, with a question of disk disease. (Tr. 715.) The record of plaintiff's April 17, 2007 spinal MRI indicated disks protruding at L2-L3, L3-L4, and L5-S1. (Tr. 739.) These findings are corroborated by the December 6, 2013[3] MRI examination results that the ALJ referenced in her opinion. (Tr. 20.)

The parties dispute whether SSR 17-2p requires the ALJ to obtain an updated consultative opinion from a medical expert when additional medical evidence is received. The new evidence, he argues, could modify the State agency medical consultant's finding that the impairment was not equivalent in severity to any impairment in the Listing of Impairments.

The applicability of SSR 17-2p need not be decided, because "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004) (case remanded for further development of record to determine whether treating physician's evidence deserved controlling weight); *Hesseltine v. Colvin,* 800 F.3d 461, 466 (8th Cir. 2015) (reversed and remanded for further proceedings when an ALJ failed to fully consider a particular listing).

The Court concludes that the final decision of the Commissioner must be reversed and the case remanded to the Commissioner. On remand, the Commissioner must obtain a medical consultant's opinion regarding whether plaintiff met the requirements of

---

[3] While December 6, 2013, is well past the date plaintiff was last insured under Title II, December 31, 2008, the evidence generated on this date may well prove or corroborate the severity of his back impairment before December 31, 2008. *See Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984) (ruling mental evaluations occurring after expiration of insured status "must be considered in order to get a clear understanding of Parsons' mental condition as of June 30, 1981."); *DeNafo v. Gardner, 272* F. Supp. 44, 46 (D. N. J. 1967) (ruling evidence of a heart condition in May 1964 must be considered as regarding the condition of claimant as of March 31, 1959, the date he last met the earnings requirement of Title II).

Listing 1.04 for his severe spinal impairment on or before December 31, 2008, the date plaintiff was last insured.

     An appropriate Judgment Order is issued herewith.

                                              /S/   David D. Noce
                               **UNITED STATES MAGISTRATE JUDGE**

Signed on July 15, 2019.